**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **MESSAGELOUD, INC.,** | |
| **Plaintiff,** | **Civil Action No.  6:25-cv-185** |
| **v.** | **JURY TRIAL DEMANDED** |
| **APPLE, INC.** | |
| **Defendant.** | |

## COMPLAINT FOR PATENT INFRINGEMENT

1.     Plaintiff MessageLoud, Inc. ("Plaintiff" or "MessageLoud"), complains against Defendant Apple, Inc. ("Apple" or "Defendant"), as follows:

## NATURE OF THE CASE

2.     This is an action for patent infringement arising under the patent laws of the United States, MessageLoud holds the rights in U.S. Patent Nos. 9,591,117 (the "'117 Patent"), 10,110,725 (the "'725 Patent"), 10,277,728 (the "'728 Patent"), 10,516,775 (the "'775 Patent"), and 11,316,964 (the "'964 Patent"). The United States patent laws grant the holder of a patent the right to exclude infringers from making, using, selling or importing the invention claimed in a patent, and to recover damages for the infringer's violations of these rights, and to recover treble damages where the infringer willingly infringed the patent. Under 35 U.S.C. § 282(a), the '117, '725, '728, '775, and '964 patents are entitled to a presumption of validity. MessageLoud is suing Defendant for infringing its patents and doing so willfully. MessageLoud seeks to recover damages from Defendant, including treble damages for willful infringement.

3.     Collectively, the '117, '725, '728, '775, and '964 patents are referred to as the

"Patents-in-Suit."

## THE PARTIES

4.      Plaintiff MessageLoud, Inc. ("MessageLoud") is a Delaware limited liability company with its principal place of business in Tenafly, New Jersey.

5.      On information and belief, Defendant Apple, Inc. is a California corporation with one or more regular and established places of business in this District at least at 12545 Riata Vista Circle, Austin, Texas 78727; Delcour Drive, Austin, Texas 78727; 6800 W Parmer Lane, Austin, Texas 78729, and 3121 Palm Way, Austin, Texas 78758. Apple may be served with process through its registered agent, the CT Corp System, at 1999 Bryan St., Ste. 900 Dallas, Texas 75201-3136.

6.      In November 2019, Apple stated that it had approximately 7,000 employees in Austin and that it expected to open, in 2022, a $1 billion, 3 million-square foot campus with capacity for 15,000 employees. *See* https://www.apple.com/newsroom/2019/11/apple-expands-in-austin/ (last accessed April 23, 2025).

7.      Apple is registered to do business in the State of Texas and has been since at least May 16, 1980.

## JURISDICTION AND VENUE

8.      This Court has exclusive subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1338 on the grounds that this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

9.      This Court has specific personal jurisdiction over Apple because Apple has a significant presence in the District through the products and services Apple provides residents of this District. Defendant regularly conducts business and has committed acts of patent infringement

within this Judicial District that give rise to this action and has established minimum contacts within this forum such that the exercise of jurisdiction over Apple would not offend traditional notions of fair play and substantial justice. Apple has committed and continues to commit acts of infringement in this Judicial District, by, among other things, offering to sell, selling, using, importing, and/or making products and services that infringe the asserted patents. Apple has further induced acts of patent infringement by others in this Judicial District and/or has contributed to patent infringement by others in this Judicial District, the State of Texas, and elsewhere in the United States.

10.    Apple operates retail stores located in this Judicial District that offer and sell products on its behalf in this District, including products accused of infringement herein. For example, Apple's website (https://www.apple.com/retail/; last accessed April 23, 2025) reflects that Apple operates the Apple Domain NORTHSIDE store located at 3121 Palm Way, Austin, Texas 78758 and the Apple Barton Creek store located at 2901 S Capital of Texas Hwy, Austin, Texas 78746.

11.    Apple's website further indicates that its Apple Domain NORTHSIDE location offers shopping, order pickup, and support/instruction (through the Genius Bar and scheduled workshops).

12.    Apple also partners with third parties in this District acting as Apple Authorized Retailers that can sell Apple products via their physical store(s). These include retailers Target (e.g., the retail location at 5401 Bosque Blvd., Waco, TX), Walmart (e.g., the retail locations at 4320 Franklin Ave and 600 Hewitt Dr located in Waco, TX), Best Buy (e.g. the retail location at 4627 S Jack Kultgen Expy, Waco, TX), Office Depot (e.g., the retail locations at 5524 Bosque Blvd and 4627 Jack Kultgen Fwy in Waco, TX), T-Mobile (e.g., the retail locations at 2448 W

Loop 340 Suite 24a and 100 N New Rd Ste 110 in Waco, TX), and Verizon (e.g., the retail locations at 2812 W Loop 340 Ste H12 and 5301 Bosque Blvd Ste 120 in Waco, TX). On information and belief, Apple Authorized Resellers are important to Apple's retail strategy and represent a large portion of sales of Apple products worldwide.

13.    MessageLoud's causes of action arise directly from Apple's business contacts and other activities in the State of Texas and this District, including Apple's sale of the Accused Instrumentalities.

14.    Apple has derived substantial revenues from its infringing acts within the State of Texas and this District.

15.    Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1400(b) and 1391(b) and (c) because Defendant is subject to personal jurisdiction in this Judicial District, has committed acts of patent infringement in this Judicial District, and has a regular and established place of business in this Judicial District. Defendant, through its own acts, makes, uses, sells, and/or offers to sell infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with the Judicial District such that this venue is a fair and reasonable one.

16.    Apple also maintains a significant physical presence in this Judicial District and employs many people in this Judicial District. On November 20, 2019, Apple announced that it was breaking ground on its $1 billion, 3-million-square-foot campus "as part of its broad expansion in the city." *See* https://www.apple.com/newsroom/2019/11/apple-expands-in-austin/ (last accessed April 23, 2025). Apple also described in that 2019 press release that it was "steadily growing in Austin with approximately 7,000 employees in the city." *Id.* Not only did Apple build a new campus in Austin, "Apple and its manufacturing partners invested over $200 million in the

Mac Pro facility in Austin, building out the complex assembly line where the Mac Pro is produced." *Id.*

17.    In 2023, Apple "filed projects totaling $240 million for an expansion of its north Austin campus…" https://www.mysanantonio.com/business/article/tesla-apple-austin-expansion-17708535.php (last accessed April 23, 2025). "Capstone Phase Two AC09 and Capstone Phase Two AC07, as the projects are called, are a four-story and a five-story building, respectively, set for construction at 6900 Parmer Lane. Between the two buildings, Apple is adding 419,441 square-feet of office space. Construction begins for both buildings on September 30 of [2023] and have an estimated completion date of March 30, 2025." *Id.*

18.    The "Careers at Apple" section of Apple's website highlights Austin as "a vibrant location at the intersection of tech and the arts" having a "range of teams and specialties." https://www.apple.com/careers/us/work-at-apple/austin.html (last accessed April 23, 2025). Among the categories of roles shown are Hardware, Operations and Supply Chain, Corporate Functions, Support and Service, Software and Services, and Sales and Business Development. *Id.*

19.    So important to Apple is the Austin campus that Apple reportedly recently threatened that one of its teams, the Data Operations Annotations team, located in California, to relocate to Austin or be terminated. https://appleinsider.com/articles/24/01/14/apple-offers-austin-relocation-to-121-san-diego-employees-in-office-closure (last accessed April 23, 2025). An Apple spokesperson confirmed the relocation was to happen, with the Austin office being "where a majority of the team is already based." *Id.*

20.    The Data Operations Annotations team, consolidated in Austin after relocating 121 employees from San Diego in 2024, focuses on improving Siri. *Id.* This group reportedly analyzes voice queries to enhance Siri's accuracy and functionality across multiple languages, reflecting

Austin's role in AI and machine learning advancements. *Id*.

21.     Hardware teams in Austin contribute to the development of groundbreaking products like the iPhone, iPad, Mac, and Apple Watch. Recent job postings indicate roles in hardware engineering, machine learning and AI, software and services, testing, and prototyping, suggesting involvement in next-generation device components. https://jobs.apple.com/en-us/search?sort=relevance&location=austin-AST (last accessed April 23, 2025).

22.     On information and belief, Apple has committed acts of willful direct and indirect infringement of the Patents-in-Suit in the Western District of Texas. For example, Apple sells iPads, iPhones, computers, laptops, Apple Watches, and the new Vision Pro device to individuals in this Judicial District, which ship with various versions of MacOS, iOS, iPadOS, watchOS, and visionOS.

## PATENTS-IN-SUIT

23.     MessageLoud is the assignee of all substantial rights granted in United States Patent No. 9,591,117 (the "'117 Patent"), titled "Method and System For Communication," a true and correct copy of which is attached as **Exhibit A**.

24.     MessageLoud is the assignee of all substantial rights granted in United States Patent No. 10,110,725 (the "'725 Patent"), titled "Method and System For Communication," a true and correct copy of which is attached as **Exhibit B**.

25.     MessageLoud is the assignee of all substantial rights granted in United States Patent No. 10,277,728 (the "'728 Patent"), titled "Method and System For Communication," a true and correct copy of which is attached as **Exhibit C**.

26.     MessageLoud is the assignee of all substantial rights granted in United States Patent No. 10,516,775 (the "'775 Patent"), entitled "Method and System For Communication," a true and

correct copy of which is attached as **Exhibit D**.

27.    MessageLoud is the assignee of all substantial rights granted in United States Patent No. 11,316,964 (the "'964 Patent"), entitled "Method and System For Communication," a true and correct copy of which is attached as **Exhibit E**.

28.    MessageLoud, founded in 2013 by Garin Toren, emerged as a pioneering force in the realm of messaging software solutions, addressing the critical intersection of smartphone usage and driving safety. The company's inception stemmed from Toren's personal experience as a new car owner and father, recognizing the inherent conflict between the immediate demands of smartphone notifications and the necessity of attentive driving. At a time when texting-and-driving laws were nonexistent in the United States and in-car message reading capabilities were limited to rudimentary text-to-speech functions for standard messages, MessageLoud introduced an innovative application designed to automatically read aloud messages and emails in over 100 languages.

29.    The technologies of the Patents-in-Suit were invented by Garin Toren and generally cover methods and systems for delivering and reading out loud text messages, emails, and/or messages from a messenger application to a user without any user input. These technologies are especially helpful in situations where the user is engaged in an activity, such as driving, exercising, or working. In driving mode, for example, while the user is driving, the user can hear announcements and messages/emails aloud without looking at the screen of the phone, and use gestures to operate the phone.

30.    Apple makes, uses, offers to sell, sells and/or imports into the United States products and/or systems that infringe the Patents-in-Suit.

31.    Apple has been on notice of the Patents-in-Suit and Apple's infringement of the

Patents-in-Suit by the Accused Instrumentalities since, at least, April 4, 2024.

32.    Apple is not licensed to the Patents-in-Suit and its infringement of the Patents-in-Suit is willful and deliberate since at least the date of the Complaint.

### COUNT 1
### (Infringement of the '117 Patent)

33.    MessageLoud repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

34.    On March 7, 2017, the United States Patent and Trademark Office duly and legally issued the '117 Patent entitled "Method and System for Communication."

35.    MessageLoud is the owner of all rights, title, and interest in and to the '117 Patent, including the right to assert all causes of action arising under the '117 Patent and the right to any remedies for the past, current, and future infringement of the '117 Patent.

36.    Apple is not licensed under the '117 Patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the '117 Patent whatsoever.

37.    Claim 1 of the '117 Patent recites:

1. A computer implemented method to be carried out with a processor, a memory, and a touch screen, comprising:

a) determining without any input by a user that a text message, a message from a messenger application, or an email has arrived, wherein the user receives at least two or more different types of messages selected from the group consisting the text message, the email, and the message from the messenger application;

b) analyzing without any input by the user a content of the text message, the message from the messenger application, or the email;

c) placing the email, the message from the messenger application, or the text message in a single queue to be read aloud in order of receipt time regardless of message type, wherein emails, messages from the messenger application, and text messages are read aloud one after another regardless of whether a next message in the queue is a new text message, a new message from the messenger application, or a new email;

d) informing the user without any input by the user that the text message, the message from the messenger application, or the email has arrived from a sender by reading at least aloud identity of the sender;

e) allowing the user time to take an affirmative action to stop reading a body of the text message, the message from the messenger application, or the email aloud to the user, wherein the affirmative action is limited to a memorized gesture performed on the touch screen; and

f) in accordance with not receiving an input corresponding to the affirmative action from the user, reading aloud the body of the text message, the message from the messenger application, or the email, and in case of the email, further reading aloud a subject of the email;

wherein if the user is engaged in driving a vehicle, the screen does not display any portion of the email, the text message, or the message from the messenger application.

38.    Apple has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 1, of the '117 Patent in violation of 35 U.S.C. § 271(a) because Apple makes, uses, offers for sale, sells, and/or imports certain products, including within this District, that perform the above method.

39.    These products include all Apple products that support or enable features that read notifications aloud without user input, including the following devices: iPhone XR, iPhone XS / XS Max, iPhone 11, iPhone 11 Pro / 11 Pro Max, iPhone SE (2nd generation), iPhone 12 mini, iPhone 12, iPhone 12 Pro / 12 Pro Max, iPhone 13 mini, iPhone 13, iPhone 13 Pro / 13 Pro Max, iPhone SE (3rd generation), iPhone 14 / 14 Plus, iPhone 14 Pro / 14 Pro Max, iPhone 15 / 15 Plus, iPhone 15 Pro / 15 Pro Max, iPhone 16 / 16 Plus, iPhone 16 Pro / 16 Pro Max, iPhone 16e, iPad (6th generation), iPad Pro 11-inch (1st generation), iPad Pro 12.9-inch (3rd generation), iPad Air (3rd generation), iPad mini (5th generation), iPad (7th generation), iPad Pro 11-inch (2nd generation), iPad Pro 12.9-inch (4th generation), iPad (8th generation), iPad Air (4th generation), iPad Pro 11-inch (3rd generation), iPad Pro 12.9-inch (5th generation), iPad (9th generation), iPad mini (6th generation), iPad Air (5th generation), iPad (10th generation), iPad Pro 11-inch (4th

generation), iPad Pro 12.9-inch (6th generation), iPad Air 11-inch (M2 chip), iPad Air 13-inch (M2 chip), iPad Pro 11-inch (M4 chip), iPad Pro 13-inch (M4 chip), iPad mini (7th generation), iPad (11th generation - A16 Bionic chip), iPad Air 11-inch (M3 chip), iPad Air 13-inch (M3 chip), Apple Watch Series 3, Apple Watch Series 4, Apple Watch Series 5, Apple Watch Series 6, Apple Watch SE (1st generation), Apple Watch Series 7, Apple Watch Series 8, Apple Watch SE (2nd generation), Apple Watch Ultra (1st generation), Apple Watch Series 9, Apple Watch Ultra 2, Apple Watch Series 10, and Apple Vision Pro (1st Generation), when such devices are used or paired with: Apple "AirPods" earbuds or headphones; "Beats" earbuds, headphones, or speakers, or in-vehicle devices configured with Apple CarPlay (including the vehicles listed at https://www.apple.com/ios/carplay/available-models/, last accessed May 1, 2025) (the "Accused Instrumentalities").

40.     Apple's infringing use of the Accused Instrumentalities includes its internal use and testing of the Accused Instrumentalities.

41.     The Accused Instrumentalities satisfy all claim limitations of one or more of the claims of the '117 Patent, including at least claim 1, as shown in **Exhibit F**.

42.     Apple has received notice and has had actual or constructive knowledge of the '117 Patent and the infringing nature of the Accused Instrumentalities since at least the service of this Complaint.

43.     Since having notice of the '117 Patent, through its actions, Apple has indirectly infringed and continues to indirectly infringe the '117 Patent in violation of 35 U.S.C. § 271(b). Apple has actively induced product makers, distributors, partners, agents, affiliates, service providers, importers, resellers, customers, retailers, and/or end users of the Accused Instrumentalities to directly infringe the '117 Patent by, among other things, disseminating,

manufacturing, distributing, importing, and maintaining the Accused Instrumentalities, and creating, disseminating, advertising, and promoting the use of the Accused Instrumentalities through software updates, promotional and marketing materials, product descriptions, supporting materials, operating manuals, technical information, and other instructions on how to implement and configure the Accused Instrumentalities with knowledge and the specific intent that its efforts will result in the direct infringement of the '117 Patent.

44.    Apple engages in the aforementioned actions knowing and intending that its customers and end users will commit these infringing acts. Apple also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the '117 Patent, thereby specifically intending for and inducing its customers to infringe the '117 Patent through the customers' normal and customary use of the Accused Instrumentalities.

45.    In addition, Apple has indirectly infringed and continues to indirectly infringe the '117 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, the Accused Instrumentalities, and advertising and/or pushing software updates for the Accused Instrumentalities, with knowledge that the Accused Instrumentalities and software updates thereto are especially designed or adapted to operate in a manner that infringes the '117 Patent and despite the fact that the infringing technology or aspects of the products are not a staple article of commerce suitable for substantial non-infringing use.

46.    For example, Apple is aware that the technology described above included in the Accused Instrumentalities enables the product to operate as described above and that such functionality infringes the '117 Patent, including claim 1. Apple continues to sell and offer to sell these products in the United States after receiving notice of the '117 Patent and how the products' functionality infringe that patent.

47.    The infringing aspects of the Accused Instrumentalities can be used only in a manner that infringes the '117 Patent and thus have no substantial non-infringing uses. The infringing aspects of those instrumentalities otherwise have no meaningful use, let alone any meaningful non-infringing use.

48.    On information and belief, Apple's infringement of the '117 Patent is and has been willful and deliberate.

49.    MessageLoud has suffered damages as a result of Apple's direct and/or indirect infringement of the '117 Patent in an amount adequate to compensate for Apple's infringement, but in no event less than a reasonable royalty for the use made of the invention by Apple, together with interest and costs as fixed by the Court.

## COUNT 2
### (Infringement of the '725 Patent)

50.    MessageLoud repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

51.    On October 23, 2018, the United States Patent and Trademark Office duly and legally issued the '725 Patent entitled "Method and System for Communication."

52.    MessageLoud is the owner of all rights, title, and interest in and to the '725 Patent, including the right to assert all causes of action arising under the '725 Patent and the right to any remedies for the past, current, and future infringement of the '725 Patent.

53.    Apple is not licensed under the '725 Patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the '725 Patent whatsoever.

54.    Claim 1 of the '725 Patent recites:

1. A computer implemented method to be carried out with a processor, a memory, and a touch screen, comprising:

a) determining without any input by a user that two or more different types

12

of messages selected from the group consisting of a text message, an email, and a message from the messenger application have been received;

b) analyzing without any input by the user a content of the received text message, message from the messenger application, or email;

c) placing the received email, message from the messenger application, or text message in a single queue to be read aloud in order of receipt time regardless of message type, wherein emails, messages from the messenger application, and text messages are read aloud one after another regardless of whether a next message in the queue is a new text message, a new message from the messenger application, or a new email;

d) informing the user without any input by the user that the received text message, message from the messenger application, or email has been received from a sender by reading aloud at least an identity of the sender;

e) allowing the user a time to take an affirmative action to stop reading a body of the received text message, message from the messenger application, or email aloud to the user, wherein the affirmative action is limited to a gesture performed on the touch screen; and

f) based on not receiving an input corresponding to the affirmative action from the user, reading aloud the body of the received text message, message from the messenger application, or email.

55.    Apple has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 1, of the '725 Patent in violation of 35 U.S.C. § 271(a) because Apple makes, uses, offers for sale, sells, and/or imports certain products, including within this District, that perform the above method, including the Accused Instrumentalities.

56.    Apple's infringing use of the Accused Instrumentalities includes its internal use and testing of the Accused Instrumentalities.

57.    The Accused Instrumentalities satisfy all claim limitations of one or more of the claims of the '725 Patent, including at least claim 1, as shown in **Exhibit G**.

58.    Apple has received notice and has had actual or constructive knowledge of the '725 Patent and the infringing nature of the Accused Instrumentalities since at least the service of this

Complaint.

59.     Since having notice of the '725 Patent, through its actions, Apple has indirectly infringed and continues to indirectly infringe the '725 Patent in violation of 35 U.S.C. § 271(b). Apple has actively induced product makers, distributors, partners, agents, affiliates, service providers, importers, resellers, customers, retailers, and/or end users of the Accused Instrumentalities to directly infringe the '725 Patent by, among other things, disseminating, manufacturing, distributing, importing, and maintaining the Accused Instrumentalities, and creating, disseminating, advertising, and promoting the use of the Accused Instrumentalities through software updates, promotional and marketing materials, product descriptions, supporting materials, operating manuals, technical information, and other instructions on how to implement and configure the Accused Instrumentalities with knowledge and the specific intent that its efforts will result in the direct infringement of the '725 Patent.

60.     Apple engages in the aforementioned actions knowing and intending that its customers and end users will commit these infringing acts. Apple also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the '725 Patent, thereby specifically intending for and inducing its customers to infringe the '725 Patent through the customers' normal and customary use of the Accused Instrumentalities.

61.     In addition, Apple has indirectly infringed and continues to indirectly infringe the '725 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, the Accused Instrumentalities, and advertising and/or pushing software updates for the Accused Instrumentalities, with knowledge that the Accused Instrumentalities and software updates thereto are especially designed or adapted to operate in a manner that infringes the '725 Patent and despite the fact that the infringing technology or aspects

14

of the products are not a staple article of commerce suitable for substantial non-infringing use.

62.    For example, Apple is aware that the technology described above included in the Accused Instrumentalities enables the product to operate as described above and that such functionality infringes the '725 Patent, including claim 1. Apple continues to sell and offer to sell these products in the United States after receiving notice of the '725 Patent and how the products' functionality infringe that patent.

63.    The infringing aspects of the Accused Instrumentalities can be used only in a manner that infringes the '725 Patent and thus have no substantial non-infringing uses. The infringing aspects of those instrumentalities otherwise have no meaningful use, let alone any meaningful non-infringing use.

64.    On information and belief, Apple's infringement of the '725 Patent is and has been willful and deliberate.

65.    MessageLoud has suffered damages as a result of Apple's direct and/or indirect infringement of the '725 Patent in an amount adequate to compensate for Apple's infringement, but in no event less than a reasonable royalty for the use made of the invention by Apple, together with interest and costs as fixed by the Court.

## COUNT 3
(Infringement of the '728 Patent)

66.    MessageLoud repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

67.    On April 30, 2019, the United States Patent and Trademark Office duly and legally issued the '728 Patent entitled "Method and System for Communication."

68.    MessageLoud is the owner of all rights, title, and interest in and to the '728 Patent, including the right to assert all causes of action arising under the '728 Patent and the right to any

remedies for the past, current, and future infringement of the '728 Patent.

69.    Apple is not licensed under the '728 Patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the '728 Patent whatsoever.

70.    Claim 1 of the '728 Patent recites:

1. A computer implemented method to be carried out with a processor, a memory, and a touch screen, comprising:

a) determining without any input by a user that two or more different types of messages selected from the group consisting of a text message, an email, and a message from a messenger application have been received;

b) analyzing without any input by the user a content of the received text message, message from the messenger application, or email;

c) placing the received email, message from the messenger application, or text message in a single queue to be read aloud in order of receipt time regardless of message type, wherein emails, messages from the messenger application, and text messages are read aloud one after another regardless of whether a next message in the queue is a new text message, a new message from the messenger application, or a new email;

d) informing the user without any input by the user that the received text message, message from the messenger application, or email has been received from a sender by reading aloud at least an identity of the sender;

e) allowing the user a time to take an affirmative action to stop reading a body of the received text message, message from the messenger application, or email aloud to the user; and

f) based on not receiving an input corresponding to the affirmative action from the user, reading aloud the body of the received text message, message from the messenger application, or email.

71.    Apple has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 1, of the '728 Patent in violation of 35 U.S.C. § 271(a) because Apple makes, uses, offers for sale, sells, and/or imports certain products, including within this District, that perform the above method, including the Accused Instrumentalities.

72.     Apple's infringing use of the Accused Instrumentalities includes its internal use and testing of the Accused Instrumentalities.

73.     The Accused Instrumentalities satisfy all claim limitations of one or more of the claims of the '728 Patent, including at least claim 1, as shown in **Exhibit H**.

74.     Apple has received notice and has had actual or constructive knowledge of the '728 Patent and the infringing nature of the Accused Instrumentalities since at least the service of this Complaint.

75.     Since having notice of the '728 Patent, through its actions, Apple has indirectly infringed and continues to indirectly infringe the '728 Patent in violation of 35 U.S.C. § 271(b). Apple has actively induced product makers, distributors, partners, agents, affiliates, service providers, importers, resellers, customers, retailers, and/or end users of the Accused Instrumentalities to directly infringe the '728 Patent by, among other things, disseminating, manufacturing, distributing, importing, and maintaining the Accused Instrumentalities, and creating, disseminating, advertising, and promoting the use of the Accused Instrumentalities through software updates, promotional and marketing materials, product descriptions, supporting materials, operating manuals, technical information, and other instructions on how to implement and configure the Accused Instrumentalities with knowledge and the specific intent that its efforts will result in the direct infringement of the '728 Patent.

76.     Apple engages in the aforementioned actions knowing and intending that its customers and end users will commit these infringing acts. Apple also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the '728 Patent, thereby specifically intending for and inducing its customers to infringe the '728 Patent through the customers' normal and customary use of the Accused Instrumentalities.

77.    In addition, Apple has indirectly infringed and continues to indirectly infringe the '728 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, the Accused Instrumentalities, and advertising and/or pushing software updates for the Accused Instrumentalities, with knowledge that the Accused Instrumentalities and software updates thereto are especially designed or adapted to operate in a manner that infringes the '728 Patent and despite the fact that the infringing technology or aspects of the products are not a staple article of commerce suitable for substantial non-infringing use.

78.    For example, Apple is aware that the technology described above included in the Accused Instrumentalities enables the product to operate as described above and that such functionality infringes the '728 Patent, including claim 1. Apple continues to sell and offer to sell these products in the United States after receiving notice of the '728 Patent and how the products' functionality infringe that patent.

79.    The infringing aspects of the Accused Instrumentalities can be used only in a manner that infringes the '728 Patent and thus have no substantial non-infringing uses. The infringing aspects of those instrumentalities otherwise have no meaningful use, let alone any meaningful non-infringing use.

80.    On information and belief, Apple's infringement of the '728 Patent is and has been willful and deliberate.

81.    MessageLoud has suffered damages as a result of Apple's direct and/or indirect infringement of the '728 Patent in an amount adequate to compensate for Apple' infringement, but in no event less than a reasonable royalty for the use made of the invention by Apple, together with interest and costs as fixed by the Court.

## COUNT 4
### (Infringement of the '775 Patent)

82.     MessageLoud repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

83.     On December 24, 2019, the United States Patent and Trademark Office duly and legally issued the '775 Patent entitled "Method and System for Communication."

84.     MessageLoud is the owner of all rights, title, and interest in and to the '775 Patent, including the right to assert all causes of action arising under the '775 Patent and the right to any remedies for the past, current, and future infringement of the '775 Patent.

85.     Apple is not licensed under the '775 Patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the '775 Patent whatsoever.

86.     Claim 1 of the '775 Patent recites:

1. A computer implemented method to be carried out with a processor, a memory, and a touch screen, comprising:

a) determining without any input by a user that one or more different types of messages selected from the group consisting of a text message, an email, and a message from a messenger application have been received;

b) analyzing without any input by the user a content of the received text message, message from the messenger application, or email;

c) placing the received email, message from the messenger application, or text message in a queue to be read aloud in order of receipt time;

d) informing the user without any input by the user that the received text message, message from the messenger application, or email has been received from a sender by reading aloud at least an identity of the sender;

e) allowing the user a time to take an affirmative action to stop reading aloud to the user a body of the received text message, message from the messenger application, or email; and

f) based on not receiving an input corresponding to the affirmative action from the user, reading aloud the body of the received text message, message from the messenger application, or email.

87.    Apple has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 1, of the '775 Patent in violation of 35 U.S.C. § 271(a) because Apple makes, uses, offers for sale, sells, and/or imports certain products, including within this District, that perform the above method, including the Accused Instrumentalities.

88.    Apple's infringing use of the Accused Instrumentalities includes its internal use and testing of the Accused Instrumentalities.

89.    The Accused Instrumentalities satisfy all claim limitations of one or more of the claims of the '775 Patent, including at least claim 1, as shown in **Exhibit I**.

90.    Apple has received notice and has had actual or constructive knowledge of the '775 Patent and the infringing nature of the Accused Instrumentalities since at least the service of this Complaint.

91.    Since having notice of the '775 Patent, through its actions, Apple has indirectly infringed and continues to indirectly infringe the '775 Patent in violation of 35 U.S.C. § 271(b). Apple has actively induced product makers, distributors, partners, agents, affiliates, service providers, importers, resellers, customers, retailers, and/or end users of the Accused Instrumentalities to directly infringe the '775 Patent by, among other things, disseminating, manufacturing, distributing, importing, and maintaining the Accused Instrumentalities, and creating, disseminating, advertising, and promoting the use of the Accused Instrumentalities through software updates, promotional and marketing materials, product descriptions, supporting materials, operating manuals, technical information, and other instructions on how to implement and configure the Accused Instrumentalities with knowledge and the specific intent that its efforts will result in the direct infringement of the '775 Patent.

92.     Apple engages in the aforementioned actions knowing and intending that its customers and end users will commit these infringing acts. Apple also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the '775 Patent, thereby specifically intending for and inducing its customers to infringe the '775 Patent through the customers' normal and customary use of the Accused Instrumentalities.

93.     In addition, Apple has indirectly infringed and continues to indirectly infringe the '775 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, the Accused Instrumentalities, and advertising and/or pushing software updates for the Accused Instrumentalities, with knowledge that the Accused Instrumentalities and software updates thereto are especially designed or adapted to operate in a manner that infringes the '775 Patent and despite the fact that the infringing technology or aspects of the products are not a staple article of commerce suitable for substantial non-infringing use.

94.     For example, Apple is aware that the technology described above included in the Accused Instrumentalities enables the product to operate as described above and that such functionality infringes the '775 Patent, including claim 1. Apple continues to sell and offer to sell these products in the United States after receiving notice of the '775 Patent and how the products' functionality infringe that patent.

95.     The infringing aspects of the Accused Instrumentalities can be used only in a manner that infringes the '775 Patent and thus have no substantial non-infringing uses. The infringing aspects of those instrumentalities otherwise have no meaningful use, let alone any meaningful non-infringing use.

96.     On information and belief, Apple's infringement of the '775 Patent is and has been willful and deliberate.

97.     MessageLoud has suffered damages as a result of Apple's direct and/or indirect infringement of the '775 Patent in an amount adequate to compensate for Apple's infringement, but in no event less than a reasonable royalty for the use made of the invention by Apple, together with interest and costs as fixed by the Court.

### COUNT 5
(Infringement of the '964 Patent)

98.     MessageLoud repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

99.     On April 26, 2022, the United States Patent and Trademark Office duly and legally issued the '964 Patent entitled "Method and System for Communication."

100.    MessageLoud is the owner of all rights, title, and interest in and to the '964 Patent, including the right to assert all causes of action arising under the '964 Patent and the right to any remedies for the past, current, and future infringement of the '964 Patent.

101.    Apple is not licensed under the '964 Patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the '964 Patent whatsoever.

102.    Claim 1 of the '964 Patent recites:

1. A computer implemented method to be carried out with a processor, a memory, and a speaker, comprising:

a) determining without any input by a user that one or more different types of messages selected from the group consisting of a text message, an email, and a message from a messenger application have been received;

b) analyzing, without any input by the user a content of the received text message, message from the messenger application, or email;

c) placing the received email, message from the messenger application, or text message in a queue to be read aloud in order of receipt time;

d) informing the user through the speaker without any input by the user that the received text message, message from the messenger application, or email has been received from a sender by reading aloud at least an identity of the sender;

e) allowing the user a time to take an affirmative action to stop reading aloud to the user a body of the received text message, message from the messenger application, or email

f) based on not receiving an input corresponding to the affirmative action from the user, reading aloud the body of the received, text message, message from the messenger application, or the email and

g) allowing the user an option to stop the reading aloud of the received text message, the message from the messenger application, or the email.

103.    Apple has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including at least claim 1, of the '964 Patent in violation of 35 U.S.C. § 271(a) because Apple makes, uses, offers for sale, sells, and/or imports certain products, including within this District, that perform the above method, including the Accused Instrumentalities.

104.    Apple's infringing use of the Accused Instrumentalities includes its internal use and testing of the Accused Instrumentalities.

105.    The Accused Instrumentalities satisfy all claim limitations of one or more of the claims of the '964 Patent, including at least claim 1, as shown in **Exhibit J**.

106.    Apple has received notice and has had actual or constructive knowledge of the '964 Patent and the infringing nature of the Accused Instrumentalities since at least the service of this Complaint.

107.    Since having notice of the '964 Patent, through its actions, Apple has indirectly infringed and continues to indirectly infringe the '964 Patent in violation of 35 U.S.C. § 271(b). Apple has actively induced product makers, distributors, partners, agents, affiliates, service providers, importers, resellers, customers, retailers, and/or end users of the Accused Instrumentalities to directly infringe the '964 Patent by, among other things, disseminating, manufacturing, distributing, importing, and maintaining the Accused Instrumentalities, and

creating, disseminating, advertising, and promoting the use of the Accused Instrumentalities through software updates, promotional and marketing materials, product descriptions, supporting materials, operating manuals, technical information, and other instructions on how to implement and configure the Accused Instrumentalities with knowledge and the specific intent that its efforts will result in the direct infringement of the '964 Patent.

108.    Apple engages in the aforementioned actions knowing and intending that its customers and end users will commit these infringing acts. Apple also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the '964 Patent, thereby specifically intending for and inducing its customers to infringe the '964 Patent through the customers' normal and customary use of the Accused Instrumentalities.

109.    In addition, Apple has indirectly infringed and continues to indirectly infringe the '964 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, the Accused Instrumentalities, and advertising and/or pushing software updates for the Accused Instrumentalities, with knowledge that the Accused Instrumentalities and software updates thereto are especially designed or adapted to operate in a manner that infringes the '964 Patent and despite the fact that the infringing technology or aspects of the products are not a staple article of commerce suitable for substantial non-infringing use.

110.    For example, Apple is aware that the technology described above included in the Accused Instrumentalities enables the product to operate as described above and that such functionality infringes the '964 Patent, including claim 1. Apple continues to sell and offer to sell these products in the United States after receiving notice of the '964 Patent and how the products' functionality infringe that patent.

111.    The infringing aspects of the Accused Instrumentalities can be used only in a

manner that infringes the '964 Patent and thus have no substantial non-infringing uses. The infringing aspects of those instrumentalities otherwise have no meaningful use, let alone any meaningful non-infringing use.

112.    On information and belief, Apple's infringement of the '964 Patent is and has been willful and deliberate.

113.    MessageLoud has suffered damages as a result of Apple's direct and/or indirect infringement of the '964 Patent in an amount adequate to compensate for Apple's infringement, but in no event less than a reasonable royalty for the use made of the invention by Apple, together with interest and costs as fixed by the Court.

## FEES AND COSTS

114.    To the extent that Defendant's willful and deliberate infringement or litigation conduct supports a finding that this is an "exceptional case," an award of attorney's fees and costs to MessageLoud is justified pursuant to 35 U.S.C. § 285.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, MessageLoud requests entry of judgment in its favor and against Apple as follows:

a)    Declaring that Apple has directly infringed the Patents-in-Suit, and/or induced the infringement of the Patents-in-Suit;

b)    Declaring that Apple has willfully infringed and continues to infringe the Patents-in-Suit;

c)    Awarding MessageLoud damages, in an amount no less than a reasonable royalty,

arising out of Apple's infringement of the Patents-in-Suit, including damages for any continuing post-verdict infringement through entry of final judgment, in an amount according to proof;

d)    Awarding MessageLoud the trebling of any and all damages awarded to MessageLoud by reason of Apple's willful infringement of the Patents-in-Suit, pursuant to 35 U.S.C. § 284;

e)    Awarding MessageLoud pre-judgment and post-judgment interest, in an amount according to proof;

f)    Awarding MessageLoud a compulsory ongoing royalty, in an amount according to proof;

g)    Awarding attorney's fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law; and

h)    Awarding such other costs and further relief as the Court may deem just and proper.

Dated: May 5, 2025                          BOCHNER PLLC

                                            */s/ Craig, L. Uhrich*
                                            Craig, L. Uhrich (24033284)
                                            Serge Krimnus (*pro hac vice* forthcoming)
                                            Ariel Reinitz (*pro hac vice* forthcoming)
                                            1040 Ave. of the Americas, 15th Floor
                                            New York, NY 10018
                                            (646) 971-0685
                                            craig@bochner.law
                                            serge@bochner.law
                                            ariel@bochner.law

                                            *Attorneys for Plaintiff*